IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TRAVIS RINGLEE,<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>        Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:10-cv-00373-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Travis Ringlee asks the Court[1] to reverse and remand the Social Security

Administration's final agency decision denying him Disability Insurance Benefits ("DIB") and

Social Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The

Administrative Law Judge ("ALJ") determined that Mr. Ringlee did not meet the eligibility

standards for benefits because he did not have "a disability within the meaning of the Social

Security Act from May 1, 2007 through the date of [the ALJ's] decision."  (ECF No. 7, the

certified copy of the transcript of the entire record of the administrative proceedings relating to

Mr. Ringlee (hereafter "Tr. __") 10.)  Having carefully considered the parties' memoranda and

the complete record in this matter, the Court REVERSES the Commissioner's decision because

substantial evidence does not support it.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Ringlee was born on November 4, 1967.  (Tr. 77.)  He alleges onset of his disability

beginning May 1, 2007 and his date last insured as December 31, 2011.  (Tr. 9.)  In July 2007,

Mr. Ringlee protectively filed applications for DIB and SSI, which the Commission denied

---

[1]    In accordance with 28 U.S.C. sections 636(c)(1) and (3) and Federal Rule of Civil
Procedure 73, the parties have consented to proceed before the undersigned United States
Magistrate Judge.

initially on October 16, 2007 and again upon reconsideration, December 4, 2007.  (Tr. 9.)  Mr.

Ringlee then filed a written request for hearing before an ALJ on December 11, 2007, which the

Commission granted.  (Tr. 9)  The hearing took place on November 21, 2008, in Salt Lake City,

Utah.  (Tr. 9.)

At the hearing, Mr. Ringlee's attorney presented evidence Mr. Ringlee had Crohn's

disease since 1986, suffered from a back disorder, knee pain, shoulder pain, varicose veins,

thrombophlebitis, deafness in the left ear, some hearing loss in the right ear, and numbness in his

right arm.  (Tr. 30, 33–36, 38, 41.)  Mr. Ringlee's attorney also introduced evidence that Mr.

Ringlee had depression.  (Tr. 43.)

Mr. Ringlee testified he has consistent pain and diarrhea from his Crohn's disease.  (Tr.

30–31.)  He testified the Crohn's disease causes him to use the restroom upwards of ten times a

day, resulting in malnutrition and weight loss.  (Tr. 31, 33.)  Consequently, he has low energy.

(Tr. 33.)  Mr. Ringlee contends he could not perform any work in the national economy because

of these conditions.  (Tr. 27.)

The ALJ concluded Mr. Ringlee did not have a disability as defined in the Social Security

Act because as a "younger individual age 18-44," he had a residual functional capacity ("RFC")

sufficient "to perform the full range of sedentary, unskilled work" with certain limitations, and

significant numbers of those jobs existed in the national economy that Mr. Ringlee could

perform.  (Tr. 19.)

## **STANDARD OF REVIEW**

42 U.S.C. section 405(g) provides for judicial review of a final decision of the

Commissioner of the Social Security Administration ("SSA").  The Court reviews the

Commissioner's decision to determine whether the record as a whole contains substantial

evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards.  42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).  The standard "requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."  *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test

has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## LEGAL STANDARDS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

 In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation.  *See* 20 C.F.R. § 404.1520; *Williams v.*

*Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).

The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520.  The claimant has the initial burden of establishing the disability in the first four steps.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

## ANALYSIS

In this case, the ALJ applied the five-step sequential disability evaluation, and made the following findings of fact and conclusions of law with respect to Mr. Ringlee:

1. "[Mr. Ringlee] has not engaged in substantial gainful activity since May 1, 2007, the alleged onset date."  (Tr. 11.)
2. "[Mr. Ringlee] has the following severe impairments: back disorder (discogenic and degenerative) . . . ; Crohn's disease . . . ; left ear deafness . . . ; and right ear hearing loss . . . ."  (Tr. 12.)
3. "[Mr. Ringlee] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Tr. 12.)
4. Further, "[Mr. Ringlee] had the [RFC] to perform the full range of sedentary, unskilled work" with several limitations.  (Tr. 13.)
5. "[Mr. Ringlee] is unable to perform any past relevant work."  (Tr. 19.)
6. "Considering [Mr. Ringlee]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Mr. Ringlee] can perform."  (Tr. 19.)

In short, the ALJ found that Mr. Ringlee did not engage in substantial gainful activity since his alleged onset date because he had several severe impairments.  (Tr. 11, 12.)  Despite

5

those impairments, the ALJ found Mr. Ringlee could still perform sedentary work and therefore did not qualify for DIB.  (Tr. 19.)  Mr. Ringlee challenges the ALJ's determination on five grounds.

## I.   Credibility of Claimant

First, Mr. Ringlee argues that the record contradicts and substantial evidence does not support the ALJ's determination regarding Mr. Ringlee's credibility.  (ECF No. 13, Plaintiff's Opening Brief (hereinafter "Brief") at 8.)  The Court agrees.

When evaluating credibility, the ALJ must follow the prescribed two-step process:  (1) evaluate whether the claimant has an underlying medically determinable impairment that one could reasonably expect to produce the claimant's pain or other symptoms; and (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (discussing factors to evaluate credibility).  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ must cite specific evidence used in evaluating a claimant's subjective complaints, and if he finds those complaints incredible, he must explain why.  *See id.*  However, this analysis "does not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the credibility determination requisites] are satisfied."  *Id.*

The ALJ attempted to follow the prescribed two-step process for evaluating self-reported symptoms.  (1) He evaluated whether Mr. Ringlee had an underlying medically determinable impairment that one could reasonably expect to produce pain or other symptoms; and (2)

evaluated the intensity, persistence, and limiting effects of Mr. Ringlee's symptoms to determine the extent to which they limited Mr. Ringlee's functioning.  (*See* Tr. 14–15.)  As to the first step, the ALJ acknowledged that Mr. Ringlee has Crohn's disease and back impairments and a "history of ongoing pain issues" related to these conditions.  (Tr. 16.)  While not explicitly stated, the ALJ would appear to agree that one could reasonably expect these two conditions to produce pain and/or diarrhea.

At the second step, the ALJ found Mr. Ringlee's testimony regarding the intensity of his symptoms "somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence—and therefore not fully persuasive."  (Tr. 16.)  The ALJ came to this conclusion because, "throughout the time period at issue, [Mr. Ringlee] has been capable of handling his own activities of daily living, including taking care of his personal needs, doing light household chores and laundry, preparing his own meals, handling his own finances, driving his own car, shopping on a weekly basis, and visiting with family."  (Tr. 16.)  The ALJ also found that Mr. Ringlee's physicians treated his impairments "conservatively" and controlled them successfully with medication.  (Tr. 16.)  The ALJ further notes that the evaluations show Mr. Ringlee within normal limits and showing no persistent neural deficits.  (Tr. 16.)

However, to reach this result the ALJ disregards all medical evidence prior to the onset date.  (*See* Tr. 15 ("[S]ince May 1, 2007, the claimant's amended alleged onset date, there is very little objective basis to support claimant's alleged chronic functional limitations due to his impairments.").)  Through such disregard, the ALJ erred.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266–67 (10th Cir. 2008) (finding error where ALJ failed to "acknowledge any of [claimant's] medical evidence before 2001, the year she claimed her disability began.").

Through this error, the ALJ disregarded the following evidence.  Mr. Ringlee had received multiple bowel resections previous to May 1, 2007 leaving him with 210 cm of small bowel, (Tr. 241), and short bowel syndrome among other things.  (Tr. 293.)  In January of 2006 his doctor noted that he will continue to have anastomosis, require recurrent small bowel resections, has not responded well to one medication, and cannot afford other treatment options. (Tr. 294.)  With respect to his back, Mr. Ringlee had L5-S1 fused previous to the onset date and stabilized with rods and screws, which remain in place.  (Tr. 251–53, 328.)  Consideration of these uncontradicted facts make the ALJ's conclusion that Mr. Ringlee's physicians treat him "conservatively" and controlled his impairments successfully with medication erroneous.

The ALJ likewise fails to discuss significant post onset date medical evidence.  This failure, too, constitutes error under the requirement "to discuss 'the significantly probative evidence he rejects.'"  *Carpenter*, 537 F. 3d at 1266 (quoting *Clifton v. Chater*, 79 F. 3d 1007, 1010 (10th Cir. 1996)).  After his onset date, on June 29, 2007, his doctor notes Mr. Ringlee, while compliant with current therapy, has not responded to current treatment for his abdominal pain, diarrhea, and Crohn's disease.  (Tr. 420–21.)  Since the onset date "[s]acroiliac sclerosis and post surgical changes in the low abdomen and pelvis" occurred, with disc narrowing at L4-S1, mild scoliosis, (Tr. 304, 328), disk degeneration at C6/C7, and neuro foraminal narrowing. (Tr. 429.)  As of March 16, 2009, Mr. Ringlee's doctor for his back and neck issues explained he can offer only pain medication as treatment until Mr. Ringlee has an MRI/MRA, which Medicaid has refused to authorize.  (Tr. 427.)  This error further undercuts the ALJ's determination that medication adequately controlled the Chrone's disease and back pain.

Furthermore, while the ALJ finds Mr. Ringlee's testimony about activities of daily living credible, (Tr. 16), he ignores the explanations of those activities that show the impact of his pain

and diarrhea, such as accidents while shopping, inability to carry laundry up and down stairs, limited food preparation, his uncle's assistance with household chores, minimal visits with family, the time necessary to go to the bathroom, and the time necessary to clean up.  (Tr. 31–32, 37–54, 57–60, 63–65.)  Mr. Ringlee's ex-wife reports similar problems and limitations.  (Tr.175, 190–97.)   Substantial evidence does not support such a close parsing of Mr. Ringlee's testimony given the lack of evidence contradicting it and the undisputed medical conditions that could cause such difficulties.  "Plaintiff's barely performing the minimal functions of living does not make [him] able to perform gainful work."  *Locked v. Apfel*, 17-5 F.supp. 2d 28, 33 (D.D.C. 2001); *see also Pinnt v. Chater*, 988 F. Supp 1354, 1359 (D. Colo. 1997) (citing 20 C.F.R. § 404.1572 (c), § 416.970 (c) (1997).).

Similarly, the ALJ's finding that claimant has had no medical treatment since August 2007 directly contradicts the record.  Medical records show Mr. Ringlee had treatment on October 15, 2007, January 7, 2008, and September 2008.  (Tr. 354–55, 380-87, 423–25.) Furthermore, the record shows a lack of financial resources impacted Mr. Ringlee's ability to obtain treatment.  (Tr. 65, 183, 294, 317, 324, 424, 427.)  The ALJ may not discount a claimant's credibility based on his failure.  *Miranda v. Barnhart*, 205 Fed. App' 638, 642 (10th Cir. 2005).

Additionally, the ALJ stated "the medical record reflects concern by [Mr. Ringlee]'s treating physician of drug seeking behavior, for which he was released due to non-compliance." (Tr. 17.)  The parts of the record cited do not support the finding.  The first cite reflects that the doctor informed the patient of the clinic's new policy regarding pain management (Tr. 314), and the second cite reflects that Mr. Ringlee asked for "a pill to stop smoking."  (Tr. 317.)  These two pieces of evidence fall far short of substantial evidence of drug seeking behavior of the kind that would reflect negatively on Mr. Ringlee's credibility.

## II. Mental Impairments

Next, Mr. Ringlee argues the ALJ erred with respect to mental impairments at two different steps in the evaluation process.  Mr. Ringlee contents the ALJ erred at step two of the five-step disability determination in finding that Mr. Ringlee's mental impairments did not rise to the level of "severe."  (Brief at 14.)  Second, Mr. Ringlee asserts the ALJ erred by failing to consider the impact of his mental impairments at the end of step three in determining his RFC.  (*Id*.)  He argues several portions of the record indicate mental impairments much more serious than the ALJ recognized, and such impairments caused depression and inability to understand simple instructions.  (Brief at 15.)  While the Court finds no error at step two, the Court does find the ALJ erred in determining the RFC by not considering Mr. Ringlee's mental impairments.

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments severe enough to limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant does not have any severe impairments, the claimant does not qualify as disabled.  However, if the ALJ finds the claimant has any severe impairment, the analysis proceeds to the next step.  Failing to enumerate a particular severe impairment is "harmless error" if the ALJ finds another, separate severe impairment.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

To the extent that Mr. Ringlee argues the ALJ failed to consider his mental impairments, the record does not support this argument.  (Tr. 12.)  Moreover, because the ALJ found Mr. Ringlee had several other severe impairments and moved on to the next step in the evaluation

process, (Tr. 12), the ALJ's failure to list Mr. Ringlee's particular mental conditions as "severe" proved harmless at step two.

A finding of a severe impairment leads the decision maker to step three to determine whether the claimant's impairment meets the durational requirement and appears in Appendix 1 of Subpart P, 20 C.F.R. § 404, or equals a listed impairment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment, or the equivalent thereof, does not appear, the decision maker presumes the claimant qualifies as disabled. *Id.* If the impairment does not appear, the decision maker proceeds to step four. *Id.* at § 404.1520(e).

Before considering step four, the decision maker must first determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC represents the ability to do physical and mental work activities on a sustained basis despite limitations from one's impairments. *See* 20 C.F.R. § 404.1545(a).

When the ALJ determined Mr. Ringlee's RFC, the ALJ did not consider Mr. Ringlee's mental impairments. (Tr. 13-19.) In failing to do so, the ALJ erred. In making the RFC determination, the ALJ must consider all the claimant's mental limitations and restrictions. 20 C.F.R. § 404.1545 (c). Nonetheless, after determining Mr. Ringlee did not have a severe affective disorder, he never considered any mental limitations or restrictions flowing from these same complaints in determining the RFC.

### III. RFC Assessment

Mr. Ringlee argues the ALJ also erred in assessing his RFC with respect to his physical limitations. (Brief at 17.) He argues the ALJ failed to "take into account Mr. Ringlee's need to use the bathroom 10-12 times a day and the possibility he may need to change clothes." (*Id.*)

While the ALJ discussed Mr. Ringlee's need to use the restroom frequently, (*see* Tr. 14) the ALJ makes no finding about the length and frequency of bathroom visits.  The ALJ finds the report of frequency of accidents extreme but makes no finding as to how frequently he believes accidents occur.  The ALJ did find that Mr. Ringlee could not work "in an area without a restroom nearby for quick access, with the maximum allowable restroom breaks."  (Tr. 13.) Substantial evidence does not support this finding.  The record evidence supports Mr. Ringlee's claim to need ten or more bathroom breaks in a work day.  (*See* Section I above.)  Further, the record proves Mr. Ringlee will have accidents that require him to change clothes.  (Tr. 57–59, 63–64.)  Changing can take twenty minutes to a half hour.  (*Id*.)  No evidence contradicts this testimony.

### IV. Evaluation of Medical Opinion Evidence

Mr. Ringlee argues the ALJ failed to evaluate the medical opinion evidence properly. (Brief at 19.)  He argues "the ALJ gave little or no weight to all medical opinion evidence," therefore, "it is unclear on what substantial evidence the ALJ is basing his medical findings." (*Id*.)  Mr. Ringlee argues, "if the ALJ felt that none of the medical opinions was entitled to any weight, he had the obligation to more fully develop the record either by obtaining a medical opinion from one of Mr. Ringlee's treating physicians or calling a medical expert to testify." (Brief at 20.)  The ALJ did not fail to assign weight to the opinions; rather, he assigned his determination of the appropriate weight to each medical opinion in the record.  That determination does not constitute error but rather the ALJ's obligation.

Here, as Mr. Ringlee points out, the ALJ gave Mr. Mickelson's and Dr. Humphreys' opinions "little weight."  (Brief at 19.)  The ALJ explained he assigned little weight to the physicians' opinions because NO medical evidence supported their determinations.  (*See* Tr. 18.)

This assertion contradicts the medical records in this case as set forth in Section I.  Thus, substantial evidence does not support the ALJ's evaluation of the medical opinion evidence.

### V. Lay Witness Testimony

Mr. Ringlee also argues the ALJ erred by not mentioning the lay testimony of Mr. Ringlee's ex-wife, Lucretia Ringlee, or that of Ms. Fischer-Chase, an SSI specialist at the Department of Workforce Services.  However, an ALJ does not have to make specific written findings of credibility as to lay witness testimony if his written decision reflects his consideration of the lay testimony.  *See Blea v. Barnhart*, 466 F.3d 903, 914–15 (10th Cir. 2006).

Ms. Ringlee and Ms. Fischer-Chase testified that Mr. Ringlee had social and physical limitations due to his constant need to use the restroom.  (Tr. 175, 190-97, 233-34.)  Specifically, "Ms. Ringlee noted that Mr. Ringlee does not go out to family gatherings and social functions due to his need for frequent restroom visits and the accompanying pain."  (Brief at 22.)  Ms. Fischer-Chase testified that Mr. Ringlee "lost about 20 lbs. in the previous four months due to his impairments."  (*Id.*)  The ALJ does not specifically reference Ms. Ringlee's or Ms. Fischer-Chase's testimony, and his decision does not reflect consideration of the testimony.  Because their testimony supports the frequency of bathroom breaks testified to by Mr. Ringlee, the ALJ should have at least addressed the testimony.

### VI. Vocational Expert's Testimony

If the claimant cannot perform past relevant work, the ALJ moves to the final step using the RFC to determine if the claimant can perform any work available in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).  At this step, the ALJ must find the claimant disabled unless the Commissioner can establish "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the

national economy." *Williams*, 844 F.2d at 751 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(g).

This court notes the importance of the uncontradicted testimony of the vocational expert as urged by Mr. Ringlee.  (Brief at 18.)  Mr. Lister, the vocational expert, testified an individual can take a maximum of seven restroom breaks and maintain his job.  (Tr. 67.)  Four five minute breaks and three more regular breaks of longer duration make up seven.  (Tr. 70.)  Mr. Lister explained that if breaks took longer or happened more frequently or if an adult undergarment could not control the odor of an accident, a person could not obtain a job.  (Tr. 69–71.)

No evidence in the record contradicts the testimony that Mr. Ringlee has to go to the bathroom ten times during a work day or that he has frequent accidents or that the accidents take at least twenty minutes to clean up.  Given the government has the burden on step five to prove the claimant's  ability to perform any work in significant numbers in the national economy, (20 C.F.R. §§ 404.1520(g), 416.920(g)), the Government cannot meet that burden on this record.

## CONCLUSION

This Court reverses and remands for immediate calculation and payment of benefits.  The ALJ's findings in this case contradict the record without support and in large part ignore the undisputed facts.  The conditions here support reversal of the ALJ's decision.  Mr. Ringlee applied for benefits five years and nine months ago.  "While a lengthy application process by itself is not enough to warrant the Court's awarding benefits, it is a valid consideration." *Lockard*, 175 F. Supp. 2d at 34.  Furthermore, the Court cannot imagine what additional evidence the ALJ could develop regarding the frequency and length of bathroom breaks or accidents, the odor of such accidents, or the time needed to change following such accidents.  Without such evidence, the Government cannot meet its burden at step five.

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and remands for immediate calculation and payment of benefits.

DATED this 29th day of March, 2013.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge